# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-01186-COA

**KENNY F. EDMONSON D/B/A ONYXS SOUNDS LLC**         **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/03/2018 |
| TRIAL JUDGE: | HON. STANLEY ALEX SOREY |
| COURT FROM WHICH APPEALED: | JASPER COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: W. DANIEL HINCHCLIFF KENNY F. EDMONSON (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LISA L. BLOUNT |
| DISTRICT ATTORNEY: | MATTHEW GORDON SULLIVAN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/18/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLTON, P.J., WESTBROOKS AND LAWRENCE, JJ.**

**CARLTON, P.J., FOR THE COURT**:

¶1.     A Jasper County Circuit Court jury found Kenny F. Edmonson guilty of one count of check fraud in violation of Mississippi Code Annotated section 97-19-55 (Rev. 2014). The trial court sentenced Edmonson to a term of three years in the custody of the Mississippi Department of Corrections (MDOC), with two years to serve and the remainder in a restitution center until the full amount of restitution had been paid. Edmonson appeals his conviction and sentence.

¶2. Edmonson's appellate counsel has filed a brief pursuant to *Lindsey v. State*, 939 So. 2d 743 (Miss. 2005). His counsel represents that he diligently searched the record for any arguable issues that could be presented on appeal but found none. Edmonson filed a pro se supplemental brief, asserting that his indictment was legally insufficient and that he was wrongly held personally liable under section 97-19-55 because the check at issue was written on the account of his limited liability company.

¶3. Based upon the applicable law, our review of Edmonson's supplemental pro se brief, and the record, we find that the evidence in the record is legally sufficient to support the jury's verdict and judgment of the trial court, and we find no arguable issues for appellate review. We therefore affirm Edmonson's conviction and sentence without prejudice to his right to seek post-conviction collateral relief.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶4. On February 6, 2017, a Jasper County grand jury indicted "Kenny F. Edmonson d/b/a ONYXS Sounds LLC" for writing a fraudulent check on July 11, 2016, in violation of section 97-19-55. The check was in the amount of $5,867.50, written on the ONYXS Sounds LLC account, and signed by Edmonson, the only authorized signatory on the account. The check was made out to Hub Refrigeration & Fixture Company Inc. (Hub Refrigeration) and was written as a down payment for ductless air conditioning to be installed at Edmonson's business, ONYXS Sounds LLC (ONYXS Sounds). The air conditioning work was completed, but the check was returned because the ONYXS Sounds checking account had

2

been closed due to insufficient funds. Edmonson did not pay for the air conditioning work performed by Hub Refrigeration.

¶5. Edmonson was tried on April 2, 2018. Edmonson elected to act as his own counsel, and the trial court also appointed the county public defender to act as "stand-by" or "armchair" counsel to Edmonson.

¶6. The State presented two witnesses in support of its case. Charles Shoemake, the president of the Bay Springs, Mississippi Omni Bank branch, was the State's first witness. He testified that the bank records submitted as trial exhibits were kept in the ordinary course of business and showed that an account for ONYXS Sounds was opened with a $100 deposit by Edmonson.

¶7. Shoemake testified that to open an account, an actual person had to present himself. Edmonson had been present and opened this account on May 17, 2016, with himself as sole authorized signer of checks. The bank records admitted into evidence included the account/signature card for ONYXS Sounds / Kenny F. Edmonson; a deposit ticket dated May 17, 2016 for $100; two checks for cash by Kenny F. Edmonson totaling $95 that were dated May 20, 2016, and May 23, 2016, respectively; and the check to Hub Refrigeration dated July 11, 2016, for $5,867.50. Shoemake testified that there were no further deposits made into the account after the $100 deposit.

¶8. The ONYXS Sounds checking account was closed on June 20, 2016, after the bank charge for deluxe checks was applied to the account (which exceeded the remaining account

3

balance) and other checks (not at issue in this case) had been returned. Shoemake testified that the June bank statement for the account was printed on June 30, 2016. He further testified that all statements are sent to the authorized person on the account to the account address on the authorization card and that the bank statements are mailed to the account addressee the day after they are printed. The record reflects that the June 30, 2016 bank statement indicated that it was "CLOSED."

¶9. The State's second witness was George Curry, the owner of Hub Refrigeration. He testified that Edmonson contacted him about installing ductless air conditioning at Edmonson's business. They went to the business and on July 11, 2016, Curry gave Edmonson a proposal for the cost of the work and equipment in the amount of $10,867.50. Curry required a $5,867.50 deposit. On the same day, Edmonson wrote a check to Hub Refrigeration for the $5,867.50 amount drawn on the ONYXS Sounds checking account at Omni Bank. Curry said that Edmonson was the only person he dealt with in the transaction and that Edmonson told him he was the owner of ONYXS Sounds.

¶10. Curry performed the air conditioning installation. The $5,867.50 check was returned to Curry a few days later because the account was closed. Curry called Edmonson and testified that Edmonson told him he would "take care of it." According to Curry, Edmonson promised him that he would send him a cashiers check, but Edmonson never tendered any payment.

¶11. The State rested its case-in-chief, and Edmonson moved for a directed verdict, which

4

the trial court denied.

¶12.	The trial court then advised Edmonson of his right to either testify or remain silent. Edmonson expressed his intention to call his stand-by counsel as an expert witness. The trial court did not allow Edmonson to do so because his stand-by counsel had not been previously named as a witness. The record reflects that even stand-by counsel did not know that Edmonson intended to call him as a witness.

¶13.	Edmonson then called Thaddeus Donald Edmonson, a political and jury consultant, as a witness. Edmonson attempted to tender Thaddeus Edmonson as an expert on "[b]eing able to speak [on] behalf of [a] limited liability company." The trial court did not allow Edmonson to do so because the witness had not been qualified or offered as an expert witness. Edmonson then said he had other witnesses but that he could not find his list. He also said he was not able to subpoena anyone. The trial court observed that Edmonson had been out of "jail for months and months on [his] own recognizance." The trial court told Edmonson that he "could have issued subpoenas to whatever witness, relevant witnesses you wanted to have here today." Edmonson rested his case.

¶14.	After deliberations, a unanimous jury found Edmonson guilty of check fraud. The trial court sentenced Edmonson to a term of three years in the custody of the MDOC, with two years to serve and the remainder in a restitution center until the full amount of restitution had been paid.

## STANDARD OF REVIEW

¶15.     In *Lindsey v. State*, 939 So. 2d 743, 748 (¶18) (Miss. 2005), the Mississippi Supreme

Court established a procedure "to govern cases where appellate counsel represents an

indigent criminal defendant and does not believe his or her client's case presents any arguable

issues on appeal." *Penton v. State*, 282 So. 3d 621, 625 (¶14) (Miss. Ct. App. 2019) (quoting

*Thomas v. State*, 247 So. 3d 1252, 1256 (¶19) (Miss. 2018)).  *Lindsey* requires:

> (1) Counsel must file and serve a brief in compliance with Mississippi Rule of
> Appellate Procedure 28(a)(1)-(5), (8);
>
> (2) As a part of the brief filed in compliance with Rule 28, counsel must certify
> that there are no arguable issues supporting the client's appeal, and he or she
> has reached this conclusion after scouring the record thoroughly, specifically
> examining: (a) the reason for the arrest and the circumstances surrounding
> arrest; (b) any possible violations of the client's right to counsel; (c) the entire
> trial transcript; (d) all rulings of the trial court; (e) possible prosecutorial
> misconduct; (f) all jury instructions; (g) all exhibits, whether admitted into
> evidence or not; and (h) possible misapplication of the law in sentencing.
>
> (3) Counsel must then send a copy of the appellate brief to the defendant,
> inform the client that counsel could find no arguable issues in the record, and
> advise the client of his or her right to file a pro se brief.
>
> (4) Should the defendant then raise any arguable issue or should the appellate
> court discover any arguable issue in its review of the record, the court must,
> if circumstances warrant, require appellate counsel to submit supplemental
> briefing on the issue, regardless of the probability of the defendant's success
> on appeal.
>
> (5) Once briefing is complete, the appellate court must consider the case on its
> merits and render a decision.

*Id.* at 625-26 (¶14).

¶16.     Based upon our review of the brief submitted by Edmonson's appellate counsel, we

find that his counsel fully complied with *Lindsey*.  Edmonson filed a pro se supplemental

6

brief. We now address the issues raised in that brief.

## DISCUSSION

### I.      Sufficiency of the Indictment

¶17.    Edmonson appears to assert that his indictment was legally insufficient because it does not charge him individually but, instead, charges "Kenny F. Edmonson d/b/a ONYXS Sounds, LLC."[1]  A plain reading of the indictment, however, shows that Edmonson was specifically named in the indictment.  Further, as discussed below, we find that Edmonson had ample notice of the charges against him.  We therefore find that this contention is without merit.

¶18.    Rule 7.06 of the Uniform Rules of Circuit and County Court Practice, in effect at the time Edmonson was indicted in February 2016, provides:

> The indictment upon which the defendant is to be tried shall be a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation.  Formal and technical words are not necessary in an indictment, if the offense can be substantially described without them.  The indictment shall also include the following:
>
> 1.      The name of the accused . . . .[2]

¶19.    The essential elements of the offense of passing a bad check are "the making and

---

[1] Edmonson raised a similar issue in a pre-trial motion to strike his indictment, which the trial court denied.

[2] Although Rule 7.06 was in effect when Edmonson was indicted, the Mississippi Rules of Criminal Procedure became effective July 1, 2017, and were in effect when Edmonson was tried in April 2018.  Criminal Rule subsections 14.1(1)(a)(1) and 14.1(1)(a)(2)(A) track the quoted portion of Rule 7.06.

delivering of [a] check to another person for value, and thereby obtaining from such other person money, goods, or other property of value," *Jackson v. State*, 251 Miss. 529, 531, 170 So. 2d 438, 439 (1965), "knowing at the time of . . . authorizing said check that the . . . payor has not sufficient funds in or on deposit with such bank." Miss. Code Ann. § 97-19-55.

¶20. Edmonson's indictment alleges that on July 11, 2016:

> KENNY F. EDMONSON DBA ONYXS SOUNDS, LLC . . . did willfully, unlawfully, feloniously, and with fraudulent intent, make, draw, issue, utter, deliver, or authorize a check . . . for the purpose of obtaining money, services, [or] delivery of other valuable property . . . from the aforesaid HUB REFRIGERATION & FIXTURE COMPANY, INC. The said defendant knowing then and there that there at the time of making, drawing, issuing, uttering, delivering, or authorizing said check . . . that the payor had not sufficient funds . . . on deposit with the drawee . . . OMNI BANK for payment of the aforesaid check . . . in violation of [Mississippi Code Annotated section] 97-19-55 [(Rev. 2014)].

¶21. As noted, a plain reading of the indictment shows that the defendant, "Kenny F. Edmondson," was specifically named in the indictment. The "d/b/a/ ONYXS Sounds, LLC" portion of the indictment is mere surplusage that does not affect the sufficiency of the indictment. Further, the indictment "fully notif[ies]" Edmonson of the "essential facts constituting the offense charged . . . and . . . the nature and cause of the accusation [against him]," as required by Rule 7.06. Edmonson has not raised an arguable issue warranting appellate review with respect to his "sufficiency of the indictment" assignment of error.

## II. Piercing the Corporate (LLC) Veil

¶22. Edmonson also appears to assert that he cannot be held personally liable for the July 11, 2016 check in the amount of $5,867.50 written on the checking account in the name of

8

his limited liability company (ONYXS Sounds).[3] We recognize that a basic principle under Mississippi law is "that a corporation possesses a legal existence separate and apart from that of its officers and shareholders," *Gray v. Edgewater Landing Inc*., 541 So. 2d 1044, 1047 (Miss. 1989) (quoting *Amason v. Whitehead*, 367 S.E.2d 107, 108 (Ga. Ct. App. 1988)), and that the same principle applies in the limited liability company (LLC) context. *See, e.g.*, *Rest. of Hattiesburg LLC v. Hotel & Rest. Supply Inc*., 84 So. 3d 32, 38 (¶21) (Miss. Ct. App. 2012) (recognizing that "for purposes of piercing the corporate veil, an LLC would be treated like a corporation").

¶23.    Relevant here, however, is the exception to this general rule: a distinct corporate identity will *not* be maintained if "to do so would subvert the ends of justice." *Johnson & Higgins of Miss. Inc. v. Comm'r of Ins. of Miss.*, 321 So. 2d 281, 284 (Miss. 1975); *see Rest. of Hattiesburg LLC*, 84 So. 3d at 39 (¶23). In particular, "piercing the corporate veil is appropriate where the corporation exists to perpetuate a fraud." *Stanley v. Miss. State Pilots of Gulfport Inc*., 951 So. 2d 535, 541 (¶22) (Miss. 2006). *Cf. Grand Legacy LLP v. Gant*, 66 So. 3d 137, 147 (¶33) (Miss. 2011) (noting that LLC veil would not be pierced where no

---

[3] In support of this proposition, Edmonson cites *Champluvier v. State*, 942 So. 2d 145 (Miss. 2006), without explaining the applicability of this case to his own case. As the Mississippi Supreme Court explained in *Cater v. State*, 5 So. 3d 391, 392 (¶7) (Miss. 2009), "[i]n *Champluvier*, this Court held that an agent who stole money from a limited liability company was improperly convicted for embezzlement under Mississippi Code Annotated section 97-2-19 (Rev. 2000) because a limited liability company was neither an 'incorporated company' nor a 'private person.'" *Id.* (quoting *Champluvier*, 942 So. 2d at 154). We find that neither this determination nor the cited statute have any relevance or applicability in this case that concerns section 97-19-55.

evidence of fraud on the LLC member's part was presented).[4] These principles likewise are applied in the criminal context, as recognized in a respected treatise on corporate law, *Cyclopedia on the Law of Corporations*, as follows:

> The existence of the corporate entity does not shield from prosecution the corporate agent who knowingly and intentionally causes the corporation to commit a crime. The corporation obviously acts, and can act, only by and through its human agents, and it is their conduct that the criminal law must deter, and those actors who in fact are culpable.

3A William M. Fletcher, *Cyclopedia on the Law of Corporations*, § 1348, Westlaw (database updated Sept. 2019). We find that Edmonson's "LLC shield" assignment of error is without merit.

¶24. The record reflects that Edmonson opened a checking account in the name of his limited liability company, ONYXS Sounds, depositing $100 on May 17, 2016. Edmonson was the only authorized signatory on the account. Within a week after opening the account, Edmonson wrote two checks for cash on the account, totaling $95. The May 2016 ONYXS Sounds checking account statement showed that the account was left with a balance of $5. There were no additional deposits made to the account.

---

[4] In contrast to the facts in this case, in *Grand Legacy LLP*, 66 So. 3d at 147 (¶33), the Mississippi Supreme Court found that an LLC's veil would not be pierced where no evidence was presented that the LLC had "been used as a sham to perpetrate a fraud . . . [or that it] purposefully was kept undercapitalized and unable to pay its creditors." The supreme court found, "[h]ere, no such evidence [of undercapitalization] was presented regarding [the LLC], and no evidence was presented of [the LLC member] participating personally in any representations to the [plaintiff]." *Id.* In Edmonson's case, the record reflects that both factors are present.

¶25. Shoemake, the president of the Bay Springs Omni Bank branch, testified that in June, Edmonson had written three additional checks on the account that were returned due to insufficient funds. He further explained that the bank charges an insufficient funds (NSF) fee for returned checks. The NSF charges for these three checks are reflected on the June checking account statement, as well as the bank charge for deluxe checks for the account. When these charges were applied to the account, the account was then overdrawn, and it was therefore closed on June 20, 2016, for insufficient funds. The June 30 statement mailed to Edmonson on July 1 clearly reflected that the account was "CLOSED." Ten days later, Edmonson wrote the $5,867.50 check to Hub Refrigeration. Curry testified that the air conditioning work was performed. The $5,867.50 check was later returned because the checking account had been closed. Edmonson did not pay Hub Refrigeration for the work performed in any other manner.

¶26. In short, the record reflects sufficient evidence that Edmonson acted with "fraudulent intent" in writing the $5,867.50 check on the ONYXS Sounds account knowing that the account did not have sufficient funds, in violation of section 97-19-55. *Johnson v. State*, 224 So. 3d 66, 68 (¶4) (Miss. 2016).[5] After all, the evidence reflects that he only deposited one-hundred dollars in the ONYXS Sounds checking account in the first place, and no further

---

[5] As the supreme court recognized in *Johnson v. State*, 224 So. 3d 66, 68 (¶4) (Miss. 2016), "consider[ing] the evidence in the light most favorable to the State," evidence will be deemed sufficient "if having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense." *Id.*

deposits were made, despite the other checks he had already written on the account before writing the check for $5,867.50 to Hub Refrigeration.

¶27. Based upon the applicable law discussed above and our review of the record, we therefore find that the jury appropriately determined that Edmonson was personally liable and that Edmonson's "LLC shield" assignment of error does not raise an arguable issue requiring appellate review.[6]

¶28. In conclusion, we recognize that "[a]s part of the *Lindsey* procedure, this Court must determine, based on a review of the record and any pro se brief filed, whether any arguable issue exists." *Wilson v. State*, 276 So. 3d 1241, 1265 (¶69) (Miss. Ct. App. 2018), *cert. dismissed*, 276 So. 3d 660 (Miss. 2019). As addressed above, upon a thorough review of the record and based upon the applicable law, we find that no arguable issues exist requiring appellate review. We therefore affirm Edmonson's conviction and sentence without prejudice to his right to seek post-conviction collateral relief.

---

[6] In his pro se brief, Edmonson also appears to assert that the trial judge committed "a lie under perjury" when Edmonson's bail was denied, pending appeal. We find no evidence of this contention in the record, and Edmonson provides no further discussion, or any record citation, supporting this contention. The trial court's "Order Denying Bail" pending appeal was filed with the supreme court clerk on July 23, 2019, and, in accordance with Rule 8.3 of the Mississippi Rules of Criminal Procedure and Mississippi Code Annotated section 99-35-115 (Rev. 2015), the trial court detailed in that order seven plainly valid reasons for denying Edmonson's bail, pending appeal. *See* Miss. Code Ann. § 99-35-l l5(2)(b) (requiring that the reasons for the denial of bail after conviction are to be placed in the record). There is simply no merit to Edmonson's assertion on this point, and this assertion certainly presents no arguable issue for appellate review.

12

¶29.	**AFFIRMED.**

	**BARNES, C.J., WILSON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR.**